**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| JOSIANNE ARGANT, | CIVIL ACTION NO. 06-2332 (MLC) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| NORTHERN NEW JERSEY TEAMSTERS BENEFIT PLAN, et al., | |
| Defendants. | |

**COOPER, District Judge**

Plaintiff, Josianne Argant ("Argant"), commenced this action on May 18, 2006 in New Jersey Superior Court, against the Northern New Jersey Teamsters Benefit Plan ("Plan") and Horizon Blue Cross and Blue Shield of New Jersey ("Blue Cross", and together with the Plan, "Defendants"). (Dkt. entry no. 1, Not. Rmv., Ex. A, Compl.) Argant seeks, inter alia, an order mandating that the Defendants provide her with "coverage for the medical treatment related to the accident of March 27, 200[6], over and above the $250,000 primary PIP coverage." (Id. at 3.) Defendants removed this action on the basis that the Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and thus, this Court has original jurisdiction over Argant's claims against the Plan under 28 U.S.C. § 1331. (Dkt. entry no. 1, Not. Rmv.) Argant moves for summary judgment, in effect, pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Dkt.

entry no. 11.)  Further, Defendants cross-move for summary pursuant to Rule 56.  (Dkt. entry no. 12.)  Argant did not file opposition to Defendants' cross motion, but does rely on her own motion.  The Court, for the reasons stated herein, will (1) deny Argant's motion, and (2) grant Defendants' cross motion.

## BACKGROUND

### I.    The Plan

The Plan is a self-funded multiemployer "employee benefits plan", as that term is defined in ERISA.  (Defs. Stmt. of Mat. Facts, at ¶ 1.)  The Plan was established through collective bargaining between Local 11, I.B.T. and other participating unions (collectively, the "Unions").  (Id.)  It provides "hospitalization, medical and certain other benefits to individuals covered by collective bargaining agreements requiring that contributions be made on their behalf to the [Plan]."  (Id. at ¶ 3.)  The Plan is administered by a Board of Trustees comprised of representatives of the Unions and contributing employers.  (Id. at ¶ 2.)  Also, at all times relevant to the complaint, the Plan's hospitalization benefits were managed by Blue Cross and its major medical benefits were managed in-house.  (Id. at ¶ 6.)

The Plan offers several different benefit levels.  (Id. at ¶ 4.)  A Plan participant's benefit level depends upon the contributions his or her employer has agreed to make to the Plan in the applicable collective bargaining agreement. (Id.)  Thus, the Plan is funded by employer contributions, earnings therefrom,

and participant contributions.  (Id.)  The specific benefits a Plan participant is entitled to receive are set forth in a summary plan description ("SPD").  (Id. at ¶ 5.)

**II.  Argant's Request for Benefits Under the Plan**

Argant was involved in a car accident on March 27, 2006 ("Accident"), which left her in a wheelchair with limited use of her arms and legs.  (Pl. Br., at 2.)  At the time of the Accident, Argant had automobile insurance through GEICO Casualty Insurance Company ("GEICO").  (Id. at 2.)  The GEICO policy provided Argant with $250,000 of personal injury protection ("PIP"), which was her primary medical coverage with respect to injuries resulting from an automobile accident.  (Id.)

Argant's husband was a member of the Teamsters Union at the time of the Accident.  (Id.)  Accordingly, Argant was a dependent Plan participant covered by its "Plan P" level of benefits.  (Defs. Stmt. of Mat. Facts, at ¶ 7.)  The Plan P SPD, provides, inter alia, that:

> [T]he Board of Trustees, acting as a body, has sole authority and discretion to interpret and construe the terms of this Plan and the Agreement and Declaration of Trust governing the Plan, including provisions establishing eligibility for benefits. . . .  Any determination made by the Board of Trustees with respect to a Participant's rights or benefits will be entitled to the maximum deference permitted by law and will be final and binding upon all Participants and beneficiaries.
> The Trustees shall, subject to the requirements of law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan and any other Plan documents and to decide all

> maters arising in connection with the operation or administration of the Plan.  Without limiting the generality of the foregoing, the Trustees shall have the sole and absolute discretionary authority to:
> - take all actions and make all decisions with respect to the eligibility for and the amount of benefits payable under the Plan;
> ...
> - to [sic] process and approve or deny benefit claims and rule on any benefit exclusions.

(Id. at ¶¶ 9-10; Eaton Decl., Ex. B, Plan P SPD, at 1, 104.)

The Plan P SPD also provides:

> No payments will be made for expenses incurred for you or your eligible dependents:
> ...
> - for any expenses, or portion thereof, for which mandatory automobile no-fault benefits are recovered or recoverable;
> ...
> This Plan does not cover services related to automobile accidents.
> ...
> It's your obligation to contact your insurance agent or insurance company to make sure you have elected the automobile insurance carrier as the primary coverage to ensure proper coverage for automobile injury related expenses in excess of the auto insurance policy's benefits.

(Eaton Decl., Ex. B, Plan P SPD, at 63; Pl. Appx. D, at 61-63.)

Argant was admitted at Jersey Shore Medical Center immediately after the Accident.  (Pl. Br., at 3.)  Because her injuries were extensive, Argant quickly exhausted her $250,000 primary PIP coverage with GEICO.  (Id.)  Thus, when Jersey Shore Medical Center wanted to transfer Argant to the Kessler Rehabilitation Center, it telephoned the Plan and asked that it approve the transfer.  (Id.; see Defs. Stmt. of Mat. Facts, at ¶

4

13.)  The Plan refused the request.  (See Pl. Br., at 3; Defs. Stmt. of Mat. Facts, at ¶ 13.)  Thereafter, Argant sent a letter to the Plan requesting that it indicate the "specific policy language" underlying its refusal to certify her transfer from the hospital to the rehabilitation facility.  (Defs. Stmt. of Mat. Facts, at ¶ 13.)  The Plan responded in a letter and advised Argant that (1) it had not received any information regarding her Accident other than the telephone call from Jersey Shore Medical Center, (2) the Plan P SPD, which sets forth her level of benefits, "contains a specific exclusion for services related to a motor vehicle accident", and (3) it had not refused to certify her move because it had received neither a claim for benefits nor a formal request for certification from a provider as to her injuries.  (Id. at ¶¶ 14-15; Eaton Decl., Ex. D., 4-19-06 Gomez Ltr.)

    Argant appealed the Plan's denial of benefits in a letter dated April 26, 2006.  (Defs. Stmt. of Mat. Facts, at ¶ 16; Eaton Decl., Ex. E, 4-26-06 Pl. Ltr.)  The following day, the Board of Trustees considered the appeal and concluded that the Plan's original determination was correct.  (Defs. Stmt. of Mat. Facts, at ¶ 18; see Pl. Br., at 3.)  Thus, the Board of Trustees, through their legal counsel, sent Argant's counsel a letter explaining that the Plan P SPD

> contains certain general limitations and exclusions that apply to all Plan benefits.  One such exclusion,

> set forth on page 63 of the Plan P SPD, states that no
> payments will be made for expenses for which mandatory
> automobile no-fault benefits are recovered or
> recoverable.  The SPD goes on to state that the Plan
> "does not cover services related to automobile
> accidents".  Accordingly, the Trustees denied Mr. and
> Mrs. Argant's appeal.

(Eaton Decl., Ex. F., 4-27-06 Gomez Ltr.)  Less than one month after receiving this letter, Argant commenced this action.  (Dkt. entry no. 1, Not. Rmv., Ex. A, Compl.)

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment Standard

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

6

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Id.</u> at 252. "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Id.</u> at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. <u>Id.</u> at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (internal citations omitted).

A movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion.

Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990). Instead, Rule 56(e) provides that the Court may grant the unopposed motion "if appropriate". Id.; Carp v. Internal Rev. Serv., No. 00-5992, 2002 U.S. Dist. LEXIS 2921, at *7 (D.N.J. Jan. 28, 2002) ("Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless 'appropriate.'"). An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175.

"If the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court 'will accept as true all material facts set forth by the moving party with appropriate record support.'" Carp, 2002 U.S. Dist. LEXIS 2921, at *6-*7 (citations omitted). Further, even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876, at *25-*26 (E.D. Pa. Mar. 1, 1989). Accordingly, when a plaintiff fails to respond to a defendant's motion for summary judgment, the Court need only examine the pleadings and any evidence attached to the defendant's motion. Atkinson v. City of Phila., No. 99-1541, 2000 U.S. Dist. LEXIS

8500, at *7 (E.D. Pa. June 20, 2000). However, we have carefully examined all papers filed by both sides relative to their pending cross motions for summary judgment.

**B.   Applicable Standard Of Review**

ERISA permits a plan participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan". 29 U.S.C. § 1132(a)(1)(B). The Court should review a denial of ERISA plan benefits under a de novo standard of review unless the benefit plan gives the administrator or fiduciary of the plan discretionary authority to determine benefits eligibility or construe the plan's terms. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan confers such discretion, the Court should apply a deferential "arbitrary and capricious" standard. Id. at 111-12; Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan, 298 F.3d 191, 194 (3d Cir. 2002). Under the arbitrary and capricious standard, the Court must uphold the plan administrator's decision unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pinto v. Reliance Stand. Life Ins. Co., 214 F.3d 377, 392 (3d Cir. 2000); Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir. 1997). "This scope of review is narrow, and the court

9

is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." Mitchell, 113 F.3d at 439 (alteration in original).

"[I]n reviewing an ERISA plan fiduciary's discretionary determination regarding benefits, a court must take into account the existence of the structural conflict of interest present when a financially interested entity also makes benefit determinations." Kosiba v. Merck & Co., 384 F.3d 58, 64 (3d Cir. 2004). Accordingly, an insurance company that both funds and administers benefits is generally acting under a conflict that warrants the Court applying a heightened form of the arbitrary and capricious standard of review. Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 254 (3d Cir. 2004); Firestone, 489 U.S. at 115 ("If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion."). Thus, if a potential conflict exists, the Court must employ a "sliding scale" method and match its degree of scrutiny with the degree of conflict. Kosiba, 384 F.3d at 64. Specifically, the Court must

> take into account the following factors in deciding the severity of the conflict: (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the status of the fiduciary, as the company's financial or structural deterioration might negatively impact the presumed desire to maintain employee satisfaction.

Stratton, 363 F.3d at 254 (citation and internal quotations omitted).

## II. Legal Standards Applied Here

### A. Applicable Standard of Review

The Plan P SPD, which sets forth the benefits Argant is entitled to receive, gives the Board of Trustees authority and discretion to interpret and construe the terms of the Plan, including the provisions establishing eligibility for benefits. (Defs. Stmt. of Mat. Facts, at ¶¶ 9-10; Eaton Decl., Ex. B, Plan P SPD, at 1, 104.) Therefore, the Court must review the Board of Trustees' denial of Argant's request for benefits under the arbitrary and capricious standard of review. See Firestone, 489 U.S. at 111-12; Smathers, 298 F.3d at 194. However, because the Plan is a self-funded ERISA plan, the Court must use the "sliding scale" method to determine whether a conflict exists warranting application of a heightened form of the arbitrary and capricious standard. (Defs. Stmt. of Mat. Facts, at ¶ 1.) See Stratton, 363 F.3d at 254; Kosiba, 384 F.3d at 64.

The fourth sliding-scale factor, which addresses the financial or structural deterioration of the plan fiduciary, is not relevant here. See Stratton, 363 F.3d at 254. With respect to the first and second factors, although Argant presumably did not possess a sophisticated understanding of the Plan's benefits, all Plan P participants receive the SPD, and the Trustees

11

directed Argant to the specific Plan P SPD provisions that they relied upon in addressing her benefits request. See id. Further, the Plan is not an insurer that makes benefits determinations and pays claims on a per claim basis. Instead, the Plan is funded primarily by the participating employers, who make contributions from their general operating funds, and thus, it is "the situation most likely to introduce a structural conflict because the employer feels an immediate 'sting' from paying a claim." Kosiba, 384 F.3d at 65. However, the benefit determinations are not made by a single employer, but by a Board of Trustees comprised of representatives from both the Unions and all the contributing employers. (Defs. Stmt. of Mat. Facts, at ¶ 2.) Accordingly, with respect to the third sliding-scale factor, the Board of Trustees as a whole does not have the same financial incentive to deny benefits claims that an individual employer, who singularly contributes to a plan and makes benefits determinations, would possess. See Stratton, 363 F.3d at 245. Nevertheless, the Court will apply a heightened arbitrary and capricious standard in reviewing the Board of Trustees' denial of Argant's request for benefits to account for any potential structural conflict that may exist here. See Kosiba, 384 F.3d at 68. (Defs. Stmt. of Mat. Facts, at ¶ 1.)

    **B.   Review of the Board of Trustees' Determination**

The Plan P SPD states that no payments will be made for expenses "for which mandatory automobile no-fault benefits are

recovered or recoverable". (Pl. Appx. D, at 61-63.) Argant asserts that because she obtained and exhausted her $250,000 primary PIP coverage through GEICO, she is not requesting that the Plan cover medical bills for which no-fault benefits are recoverable, and thus, she is entitled to coverage for all of her medical bills that exceed her GEICO policy coverage. (Pl. Br., at 9.) Moreover, the Plan P SPD instructs its participants to contact their insurance agent or company to make sure they have elected their automobile insurance as their primary coverage, and "to ensure proper coverage for automobile injury related expenses in excess of the auto insurance policy's benefits." (Eaton Decl., Ex. B., Plan P SPD, at 63; Pl. Appx. D, at 63.) Argant argues that she complied with this language by electing her automobile insurance policy as her primary coverage for injuries resulting from automobile accidents, and thus, she "is merely seeking coverage over and above that which was recoverable pursuant to the primary PIP coverage." (Pl. Br., at 9.)[1]

---

[1] Argant also argues that under the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984 and the Fair Automobile Insurance Reform Act of 1990, the Plan's provision that it does not cover services related to automobile accidents is void ab initio. (Pl. Br., at 5-8.) However, the Plan is not a health insurer, but instead is a self-funded ERISA plan. Thus, because these two Acts only regulate insurance, they are not applicable to the Plan. See FMC Corp. v. Holliday, 498 U.S. 52, 61 (1990) (noting that self-funded ERISA plans are exempt from state laws that regulate insurance companies because such plans are not deemed to be insurance companies or insurers).

The Court does not agree with Argant's interpretation of the Plan P SPD provisions pertaining to coverage for injuries resulting from automobile accidents.  The Plan P SPD expressly states that it "does not cover services related to automobile accidents."  (Eaton Decl., Ex. B., Plan P SPD, at 63; Pl. Appx. D, at 63.)  Further, the Plan P SPD excludes from coverage any expenses for which mandatory no-fault benefits are recoverable from any source.  Any medical expenses incurred as a result of Argant's Accident were recoverable under her GEICO no-fault PIP automobile insurance policy, but Argant's coverage was limited to $250,000.  Thus, her medical expenses are the type of expenses for which mandatory no-fault benefits are "recoverable".

The Court notes that the last paragraph on page 63 of the Plan P SPD, which instructs Plan participants to elect their automobile insurance carrier as their primary coverage to "ensure proper coverage for automobile injury related expenses in excess of the auto insurance policy's benefits", is ambiguous.  (Eaton Decl., Ex. B., Plan P SPD, at 63; Pl. Appx. D, at 63.)  Nevertheless, the Court does not believe that this language is susceptible to any interpretation that would entitle Argant to coverage for her Accident-related medical expenses.[2]  Thus, even

---

[2] The parties dispute whether the Court must interpret any ambiguities in the Plan P SPD in the light most favorable to Argant.  (Pl. Br., at 9-10; Defs. Br., at 18-19.)  However, the Court need not address this dispute because we find that none of the possible interpretations of this language require the Plan to cover any of Argant's Accident-related medical expenses.

after applying a heightened arbitrary and capricious standard, the Court finds that the Board of Trustees' determination that the Plan P level of benefits does not provide any coverage for treatment or services related to automobile accidents was not unreasonable, erroneous, or unsupported by substantial evidence. (See Eaton Decl., Ex. F, 4-27-06 Gomez Ltr., at 1.)  Pinto, 214 F.3d at 392-93 (explaining that in applying a heightened arbitrary and capricious standard of review, the court is "deferential, but not absolutely deferential"); Mitchell, 113 F.3d at 439.

    The Board of Trustees followed the claims procedures set forth in the Plan P SPD in evaluating Argant's request, and responded to her appeal on an expedited basis due to the urgency indicated in her appeal letter.  (Defs. Br., at 19.)  Further, the Board considered the Plan P SPD provisions pertaining to automobile accident-related treatments and services and determined that the intent of the language was to exclude coverage for all such treatments and services without exception. (Defs. Br., at 20.)  Thus, the Court finds that the Board of Trustees' determination was reasonable and the process utilized to reach this determination was proper.  Pinto, 214 F.3d at 392-93 (stating that in applying a heightened arbitrary and capricious standard of review a court must "look not only at the result – whether it is supported by reason – but at the process

15

by which the result was achieved"). Therefore, the Plan is entitled to summary judgment.

## CONCLUSION

The Court, for the reasons stated supra, will (1) deny Argant's motion for summary judgment, and (2) grant Defendants' cross motion for summary judgment. The Court will issue an appropriate order and judgment.

        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge